Good morning, Your Honor, Your Honors. My name is Kyle Smith. I'm the counsel for Plaintiff and Appellant Kara Barber. This appeal is essentially of a grant of preliminary injunction from the District Court. As explained in the briefs, the underlying case involved widespread pesticide contamination at Marine Corps Base Y. It was pled as a class action and was ultimately unsettled on an individualized basis. That's important because there's no, there was never any doubt that there were other claims essentially waiting in the wings that would have been filed if class was denied or if class ultimately was not granted. Following the settlement, a settlement agreement was reached, and as is the normal course, you would submit that as part of a stipulated dismissal. What makes this different is that stipulated dismissal, the original one, was denied by the District Court, who sent back a letter and said, under the Supreme Court precedent of Kokanen and this Court's precedent of Arata, there is no and does not want to have ongoing jurisdiction over settlements in this case. And so asked, and this is important, for a precise date when jurisdiction of the District Court would expire. And so the parties came back together, we drafted a new stipulated dismissal, and that's exactly what we inserted, a precise date when jurisdiction of the District Court would expire. That date was August 25th, 2016. It was roughly six months after the execution of the settlement. A few months after the settlement was executed, that's when the motion of preliminary injunction was brought. This objection, essentially, at that point, it was essentially more of in the brief of the opposition telling the Court, look, there's this jurisdictional limit in August that we need to be aware of. And it doesn't make sense at that point to engage in sort of extended proceedings. The contemplation certainly of the parties, typically with respect to enforcement of a settlement agreement, the ones I've personally been aware of, the ones as well as many of the case law, enforcement is along the lines of payment of settlement proceeds. Someone doesn't sign the settlement, then you might need some kind of motion to enforce some specific term that you have to do. This is quite a the defendants were using the settlement to try to police Barber's speech after the settlement. Well, there was a confidentiality provision. There was, Your Honor, but there's also within the settlement agreements, paragraph 7, where it protected her First Amendment rights to work on this issue of widespread contamination on the base with other families as well as with the State. And if you look at the specific terms or the specific kind of speech and comments that were being made by Barber, yes, with respect to the settlement of an undisclosed amount, that's the primary basis the court set as a breach, you'd argue. Could you do me a favor and just explain to me the proceedings in the district court. Once they began to initiate this preliminary, when they began to initiate this request for relief, the timing, so when did they file the motion for a preliminary injunction? The motion was filed in June of 2015, Your Honor. Okay, so they they filed a motion with briefs and everything? They filed the motion for preliminary injunction. At that point in time, I was actually out of the country. And so we then responded. We responded. And so when did you file your response? I don't have it in front of me, Your Honor. I believe it was, it would have been 15 to 20 days. I don't have the precise date. And then the district court scheduled a hearing? The district court then scheduled several hearings, five days of hearings. They were half days in the morning. Okay, and when did she finish with the hearings? What was the last date?  Well, let me ask you this, to be precise. Was it before August 25? It was. 2016. So she finished the hearings? Well, frankly, Your Honor, to say that she finished, what happened is there were partial hearings and the court made clear that what she wanted to rule on first was the confidentiality issue. This issue of breach for defamation, presumably we'll still have future hearings at some point, although there was a lot of testimony that came in on the actual defamation argument because Ms. Barber was forced to be on the stand. And so she was asked about damages, defamation, et cetera. The court's order, the actual motion for preliminary injunction, pardon me, the order on the preliminary injunction really focuses primarily upon the breach of confidentiality. So wait, I'm just trying to understand. So when the district court finished its last evidentiary hearing, that was before August 25? Correct. Correct. And then she submitted it for a decision? Well, again, the hearings... I'm just asking, were you expecting some sort of ruling from the court? Yes, we were. Yes, we were. And we actually had submitted a closing brief on that evidence as well. And then she issued her ruling in when? 26. Yes, a day after the jurisdictional deadline. This jurisdictional deadline issue came to the court's attention well before she issued her ruling. And the district court took the view that the deadline meant the window of time within which the defendants can bring a motion. And so she clearly thought that she had authority beyond that time to rule. What's wrong with that interpretation? So I agree that she did clearly believe that. What's wrong with that interpretation is... Well, I mean, she said that August 3rd, which is a good 20-plus days prior to the expiration per the party stipulation, she said that in the court's view, when the court has jurisdiction to reopen, it has jurisdiction with respect to the settlement. And we made it for 6 months. Once jurisdiction is reopened, there's no limit on the jurisdiction. That was the district court's view articulated on August 3rd. What is wrong with that interpretation? That clearly violates the Supreme Court precedent of Kokanen, which is jurisdiction over a settlement agreement does not mean jurisdiction over the underlying proceedings. They are separate and distinct. As well as this court's decision in Errada, the way that I would analyze it, Your Honor, is essentially we're on a continuum where if there is a wide grant of jurisdictional authority to the district court as part of the dismissal, for example, in some class actions where the court, you just say, you're going to need to have jurisdiction for ever, essentially, or certainly for a long period to oversee this settlement. Settlements are written like that all the time. In many of the cases, frankly, all of the cases cited in the answering brief are those kind of cases. On the other hand, there are cases like Kokanen and Errada where there is no grant of jurisdictional authority to the district court. In those cases, Kokanen, Errada, and others come out clearly. The judge and the court does not have jurisdiction. This obviously falls somewhere in between where there's a precise date that was inserted for the dismissal. Right. So what Kokanen says is that you don't have this inherent authority to invoke jurisdiction. There has to be an independent basis for jurisdiction. So what we have in this situation is that the parties had stipulated to the court having jurisdiction until August 26. So the district court says, okay, I recognize under Kokanen that I don't have jurisdiction without the jurisdiction. I'm just not going to rule until whatever time I'm ready to rule because apparently the district court didn't think that there was any binding authority to say that once she invokes jurisdiction that she would lose it on a date certain. So is there any authority for the proposition that once the court has jurisdiction pursuant to the party's dismissal stipulation, like in this case, it would lose jurisdiction by that date certain within the party's stipulation? Your Honor, I'm not aware of any authority that says that specifically. What all the authority instead says, for example, in O'Connor v. Colvin, this court's case, as well as Hagestad, which were also cited in our brief, is that the court's contemplation of what it views its role as is frankly irrelevant. Is there a policy rationale that would make one rule better than the other? Absolutely. It's certainty. And it's just as if plaintiffs and parties have to live by jurisdictional deadlines, so does the district court. Well, then why didn't you all litigate it as if you had a exploding deadline? Why would the court go through all these hearings, spend all that time? You asked for an extension of time to file your briefing. Is that correct? That's correct, Your Honor. Did you keep in mind that you were delaying the proceeding and resolution? Absolutely. Okay. So, did anybody raise the issue of we've got to move this case along? Did anybody evidence an understanding that you were working on an exploding deadline? Well, Your Honor . . . I didn't see it. To be fair, to some extent when the district court says this is what we're going to do and a client has to be there and where to jump, we answer how high and we participate it. You don't have confidence in being able to tell the judge politely? By the way, just to remind you, Judge, you're going to lose jurisdiction over resolution of this case if we don't conclude by August 25th. Well, Judge, it is in our written opposition to the motion for preliminary injunction that that is a specific deadline for the court. To resolve it? Yes. Okay. And what we specifically said is what makes sense, again, for that six months is to enforce a signature, payment of a settlement check, that kind of thing. But an underlying breach action is an animal and under state law of Hawaii. And it's clear under state law of In particular, issues that concern breach of a material nature, those kinds of breaches should go to the jury. And that's why it makes sense. Frankly, within that six months, I didn't view that had a basis to challenge the court's jurisdiction during that six months. That's what was provided for by the stipulation. And all the cases say that's how it is provided. Is there anything that prevents the defendants from going to state court and trying to enforce the breach? Absolutely not. And I think that's the most important thing here. And even if we don't talk about anything else, is that the prejudice of this on defendants is not. Instead, what it does is it follows the court's precedence of coconut and errata. It also legitimizes and recognizes the jurisdiction of the state court over breaches of contract. And absolutely, they can go and pursue a breach for defamation, a breach for confidentiality in the state court against our client, where, by the way, we will have a jury, have the ability to assert counterclaims and affirmative defenses such as materiality, and also have the ability to challenge witnesses through discovery and bring in witnesses, rather than an expedited evidentiary hearing that only involved testimony from Ms. Barber and a hired contractor by For City. And that really gets to, later in the brief, the irreparable harm arguments of a mediation demand. The argument that that's the irreparable harm simply doesn't cut it. Irreparable harm is when you don't have some adequate remedy. And here where families are exercising their legitimate contractual rights under the lease for mediation, I just frankly disagree. It does strike me as a little odd that there was limited jurisdiction under the terms of the parties stipulated dismissal. And it was invoked. And the only problem here is she didn't file her order until the day after. Judge, I know that's how it's phrased. Well, that's what it is. I really disagree, Your Honor, with respect to that. On one hand, for example, had that that these hearings will not be repeated. And essentially, she's going to march forward without a jury to a permanent injunction, which we also signed. Well, I guess to the merits and all of that. Absolutely. So the jurisdictional issue, yes, the six months. I agree with you that. The fact that she went over is extremely problematic. It's no different than when parties miss jurisdictional deadlines. I don't understand. And the key here is there's no – Let me ask you this. Could the court in that instance extend the jurisdictional period? No. Why not? The reason is the stipulated – I mean, suppose the court acted within the six-month period and said, oh, look, you guys have raised all these questions about jurisdiction. I'm just going to extend it. I would respectfully say no, Your Honor. And the reason is because that stipulated dismissal is a creature of contract between the two parties of what they've agreed to. Again, the O'Connor v. Colvin in Hagestad, this court basically recognizes – in Hagestad, it was where the court said, I'm going to be the czar over this settlement. I'm going to oversee it and make sure I enforce it. But there wasn't the jurisdictional allotment under the stipulated dismissal. And the court came back and said, regardless of what the court may have wanted to do or may have intended to do, that's not provided in the stipulated dismissal between the parties. We would have to find that Judge Gilmour overlooked the plain language of the contract, notwithstanding – that's why I was pressing you on whether you ever raised the loss of jurisdiction, because under contract law, it's not uncommon to look to the parties' post-contract behavior. And to the extent the behavior of the parties who negotiated it is inconsistent with the deadline, a day after the August 25th deadline, the hard deadline, as you're saying, it's curious that the parties and the court would go through all that elaborate process as if they didn't have an exploding deadline. And so, one can infer from the parties' conduct that – I'm not saying that's the case here, but that's what troubles me, is the parties' conduct is not consistent with that hard deadline interpretation. Your Honor, I – well, first, I actually – I do agree with you. When you're looking at contract between two parties that are equal bargaining places at the table, absolutely. Maybe what they do later on should be relevant. I think in this case, though, what takes it away from that analogy is that there is not an equal bargaining position at the table. I could not walk away from a district court compelling my client to fly from Florida to the motion for preliminary injunction. It's a subject matter jurisdiction that's preserved. And so, thereafter, the key objections I made in the evidence you're hearing were really related to rights to a jury that disagreed with the way the proceedings were going. Repeatedly made that objection to the point where, frankly, in these kind of proceedings, there's a point at which when you continue to challenge the court, you lose or risk your client's best position, frankly, Your Honor. Here, specifically, there is – if you wanted to look outside the plain language of that stipulation, we have a letter from the court, if that were relevant, which I don't particularly think it is, but the court says she wanted a precise date when jurisdiction would expire. So I don't think, A, the stipulated dismissal is ambiguous. And if you look at the actual – the opposition did raise the issue. We handled, you know – so, Your Honor, I believe. Thank you very much. I'm over – You're over your time, and I'll give you a minute for rebuttal. Thank you very much. I appreciate it. I apologize. Good morning, Your Honors. May it please the Court, my name is Randy Wadoff. I'm here with Lisa Munger. We're counsel for defendant appellees. The trial court's order should be affirmed because the court had jurisdiction under Kekkonen v. Guardian Life, and because the court exercised its broad discretion to grant a preliminary injunction here. Let me just begin by first answering a question. Can I have you answer the same question that I asked your opposing counsel? Is there anything that prevents you from going to the state court in order to enforce the settlement agreement? Yes, Your Honor. Under Flanagan v. Arnaz, the Ninth Circuit has ruled that where a court retains jurisdiction, like the court did here, that that's exclusive jurisdiction. And I can quote from Flanagan. It says, the reason why exclusivity is inferred is that it would make no sense for the district court to retain jurisdiction to interpret and apply its own judgment to the future conduct contemplated by the judgment, yet have a state court construing what the federal court meant in that judgment. Well, the problem that I have with your jurisdictional argument is that given the precise language that led up to this stipulation of dismissal, it seemed clear that the parties contemplated a date certain by which the court's jurisdiction would expire, and so did the district court. When the district court sent that letter out to the parties, it specifically said that give me a precise date upon which the court's retained jurisdiction over this matter would expire. And the stipulation tracked that language to say that by this date, the court's stipulation would expire. And the district court signed that. So it seemed pretty clear up until the point that you brought the enforcement action that everybody contemplated that by August 25, 26, whatever that date was, of 2016, the court would no longer have jurisdiction. So given that record, did you urge the court to rule before the expiration of its jurisdiction per the terms of the order? Because the district court was aware that there was a dispute between the parties as to whether it had the inherent authority to extend the jurisdiction, and it talked about it, I think, in the July hearing. It talked about it again on August 3. Did you urge the court, wait a minute, just to be safe, can you render ruling before the expiration of the date? And if you didn't do that, why not? We didn't do that, Your Honor. And I think this goes to Judge Fisher's point. We didn't do that because none of the parties believed that that was the case. Judge Gilmour made very clear that her interpretation of the order and her intent in inserting that language into the order was to create a window. And a district court is provided broad discretion in interpreting her own orders. When she made that point in June, that's how the parties operated under. And I think that, respectfully, Your Honor, I would disagree that the plain language of the statute, I'm sorry, of the stipulation in order doesn't create a window. I think that the terms used in the stipulation in order, it says the court shall retain jurisdiction for six months, i.e. until August 25, 2016, to resolve any disputes or actions. And I think the key terms there are disputes or actions. How about resolve? Yeah. Resolve's an important term, too, Your Honor. Important. Resolve suggests that you'll be finished. Well, it... Resolve. You're done. We've resolved it within, by August 25th. Well, Your Honor, it uses the term resolve, but it says... It doesn't say to resolve and to file any actions. Your Honor, it doesn't say that the term resolve comes after the six months and after the date. What the court said it intended by having the parties add this language was that it would create a window within which to resolve. So if you bring the dispute or action within the six months window, the court then has jurisdiction to resolve the matter. Well, what's the limit there? Because the district court essentially said six months is the window within which I can reopen the case, but once I do that, there's now no longer any limit at all. Essentially presiding over the enforcement of this settlement action by way of preliminary injunction and then on to many myriad proceedings that can arise from that. That's pretty limitless. What are the limiting principles there? Thank you, Your Honor. If I can finish answering his question, and then I will get yours. I would just also add, Your Honor, that what's important is the language that isn't in the order as well. There is nothing in the order that would suggest such a harsh and unique situation as terminating jurisdiction during an ongoing proceeding. I agree. That does strike me as a bit odd. Okay. Your Honor, to your question about whether there's any limit, the court has discretion to manage its calendar. That is a firmly established idea in our jurisprudence. It has to have that discretion to manage its calendar. Whether there is some when it opened up the proceedings in the way that it did here. And if I can, I think it is helpful to kind of walk through the procedural process that occurred here because it shows why the court must have that ability to reopen up its proceedings. We filed our motion for preliminary injunction initially on June 6, 2016, over two and a half months before the date in that stipulation and order. The court had the first conference on June 6, 2016. At that conference, defendants sought an expedited process to resolve this situation. Plaintiff requested a delay because their attorneys were traveling at the time. The court ultimately set a briefing schedule with a hearing on July 25, which would still be one month before the date in the stipulation and order. But at the July 25 hearing, the court determined for the first time that it would like to conduct an evidentiary hearing. The court also reopened with no limit on the amount of time the court would keep the case open. That's what I'm concerned with, and I'm trying to pin you down there. There isn't any suggestion on this particular factual record that you didn't act diligently or anything like that. I think the series of Facebook posts was in May, and then I think defendants acted fairly promptly after that. I'm trying to envision the rule that you would like us to announce in this case and the effect on other cases. So if basically a party moves, let's say, three days before the expiration of jurisdiction as provided for by stipulation, and the court says, well, okay, we moved a couple of days before, so I'm going to now reopen the case and I'm not going to set any time limits on that. I don't see how that comports with the party's expectation when they negotiated a deadline. So that's why I'm asking about limiting principles, because then the court would essentially reassert jurisdiction, preside over the settlement for as long as the court wants to essentially. Unfortunately, Your Honor, I don't think this is an area of the law where we can have clear, bright line, time limit type rules. This is a situation where the trial judge who's overseeing the particular proceeding has to have discretion to shape that proceeding and shape time limits. For instance, here, we have this evidentiary hearing. It begins on August 5th. Day three is August 10th, and the court announced that August 12th would be the final day of hearing. Then, on August 12th, plaintiff failed to produce their expert witness, saying they were unavailable. So the court reluctantly granted an extra day of hearing to August 15th. Then, on August 15th, plaintiff was unable to complete their examination of their expert witness. In that situation, the court determined that the best approach was to grant these extra days given the pre-deceivings that were occurring before it. If it hadn't done that, I think we'd likely be hearing a different argument from plaintiff. We'd be hearing that they were denied due process. They weren't permitted to put on their expert witness. The court has to have that power within reasonable limits to control its calendar, and I think that that's viewed under the abusive discretion standard, and I think that there's no way that Judge Gilmour abused her discretion here. The counsel says he raised in his trial brief the exploding deadline. Can you comment on that? Yes, Your Honor. I believe that the way that it was raised is in the opposition to our preliminary injunction. They said, well, on this preliminary injunction proceeding, we need to have a jury trial on this preliminary injunction proceeding, and there's no way we're going to finish a jury trial by August 25th, 2016, and I think that's the manner in which it was raised. So it wasn't raised in a, you know, we have to have a final order by August 25th. It was raised in, hey, I think because under due process I get a jury trial, we're not going to be able to finish this by that time. You were asking for any damages? The preliminary injunction motion that we filed seeks to enjoin plaintiff from violating the and it seeks an order to show cause re-sanctions. It did not ask for any specific damages. I believe we asked for attorney's fees as sanctions for bringing the motion. So we were asking for an order to show cause re-sanctions, but what's important on that issue, Your Honor, is that the order that's actually before this court, the preliminary injunction order that was issued by Judge Gilmour, it doesn't award any damages. I think that the issue... It doesn't award any sanctions. It doesn't award any sanctions. It doesn't award any damages. All it does is grant injunctive relief, and no court has ever held that in that situation a plaintiff or a party sought to be enjoined is entitled to a jury trial. I think that, you know, on the due process argument that was raised by plaintiff, they say due process was violated and we should have had It intends to grant damages in the future. Those assertions are based on a few paragraphs of colloquy between the district court and between plaintiff's counsel, but an appeal cannot be based on colloquy when there's not yet been a final order. What the district court may or may not do in the future cannot be the basis for appeal. The only order presently before the court is the August 26th preliminary injunction order, which does not award sanctions, does not grant preliminary injunctive relief. Let me ask you this. Once the preliminary injunction is in place, suppose there's allegations that Ms. Barber violates the terms and conditions of the preliminary injunction. Can you then go back to the district court and seek contempt proceedings? I think you could, Your Honor. She would be in violation of a court order at that point. So then she would have an sort of ancillary jurisdiction, I guess, to That's correct, Your Honor. That's our position. Your Honor, I want to just one last question I have, and that is, Judge Gilmour used the term reopening jurisdiction. Did you mean that to suggest that she was reopening the original basis for the jurisdiction of the complaint, or did she just misspeak? I think she may have spoke. I understood what she meant, and she addressed this issue on two different days, in late June and then on August 3rd, I believe, August 5th. And I think the first time what she was saying is she was saying, look, my order creates a window, not a cutoff. That's how this language was intended. That's how this language should be interpreted. And on the second day, when she addressed this, she was saying, look, even if you believe that the order should be reopened, I'm going to reopen that particular deadline. I don't know what she meant by reopened jurisdiction. I think she merely meant that she was going to take out that deadline so that the parties could appropriately address these claims that had been brought before them and appropriately allow the parties to put on their respective positions. Can you talk a little bit about irreparable harm? What was the evidence of irreparable harm? Thank you, Your Honor. Um, there was significant evidence of irreparable harm in this case. First, there's a substantial body of law that holds that it is irreparable harm to breach confidentiality provision in a settlement agreement. Second, plaintiff herself. It could be, but what was the evidence of actual irreparable harm? Were there lawsuits filed? Uh, did, were there statements circulated, uh, bad-mouthing defendants? Because you're alleging the increase in potential for lawsuits and harm to reputation. And I wondered what sort of specific evidentiary record you created for the district court to reach that conclusion. Thank you, Your Honor. Um, there were certainly those statements. In addition, there's plaintiff's own agreement in the settlement agreement that this conduct would, uh, constitute irreparable harm. What's really interesting about this case is because it is on social media, you can show irreparable harm in a way that's sometimes not available to a defendant. Here, what we can do is we can look at the actual responses of the people following plaintiff to the statements that she was making. So, for instance, on May 14, 2016, she makes a statement where she characterizes the nature of her lawsuit, and then she characterizes the nature of the settlement agreement that she got. That's the breach of the second one. I'm sorry? The injunction only goes to the second one. That's correct, Your Honor. But it's important the way that she put both of those statements together, because what she does when she puts those two statements together is she's implying that there was merit to the claims that she brought. So she says, I brought a claim for hazardous contamination all across Marine Corps Base Hawaii, and I got this monetary settlement. When she puts those two statements together, it implies that there are these hazardous conditions across Marine Corps Base Hawaii, whether absolutely or not. That is incredibly damaging to defendants' goodwill and to its reputation. And what we can, we don't just have to rely on. The injunction says she shall not include the for an undisclosed amount. It's, there was a settlement. She can say that. That's correct, Your Honor. And that's all the injunction is dealing with at this point. That's correct, Your Honor. And the statements that she, first off, Your Honor, there's been no appeal of the issue of whether Ms. Barber likely breached the settlement agreement. That's something that's not on appeal before you today. So that issue was established at the lower court. What she did when she made those statements is it wasn't just that she said undisclosed amount. She said that at the same time referencing what's known as basic allowance for housing, which is the stipend that military service members are provided to purchase housing on the island. And for many service members, that is a very substantial amount. Ranges from $2,500 a month to $4,500 a month, depending on your rank. So when you pair those two things up, it implies to folks that they're going to get all of that basic allowance for housing back. And that's actually what the individuals following Ms. Barber's blog read. In response to that May 14th statement I read, we can look at what her followers said. Tosh Elam stated, I am definitely looking into this. Wayne Walter then stated, just emailed the attorney. Ms. Elam then replied, I emailed him too. Then Jackie Davis stated two hours later, I'm sorry, an hour and a half later, that's a lot of money. So clearly, this message was being conveyed to plaintiff's followers that they should contact the attorneys and that this was a type of settlement they too would be able to obtain. I see that I'm running out of time, Your Honor, but as of the time of this hearing, we had received over a hundred demands from different families across Marine Corps Base Hawaii. Encouraging that type and that extent of litigation is exactly the type of irreparable harm that this confidentiality provision was designed to prevent. Okay. Thank you, counsel. Your Honor, there's a question by Judge Fischer over what we said in the opposition. It stayed in the brief, but what we specifically said is, as this court is aware, the federal court is one of limited jurisdiction. Here under the terms of the order of dismissal, the parties agreed this court should retain jurisdiction for six months, in parenthesis, until August 25th, 2016, to resolve disputes or actions related to the agreement. Four cities motion, however, seeks to enjoin Ms. Barber's speech in advance of bringing claims against Ms. Barber for breach of the agreement and or for disparagement. Such a lawsuit would require a new complaint, extensive discovery to resolve the disputed fact related to claims for negligence and defamation, and cannot be accomplished within the one month that remains under this court's jurisdiction. Further, this court's original exercise of jurisdiction was predicated on the Class Action Fairness Act, I'm paraphrasing now. Jumping out, according to plaintiffs' respect, we suggest that this mandatory injunction for an order against Ms. Barber in advance of litigation would be more appropriately brought in state court where such an action must be maintained. So we clearly brought up, that's when the district court judge stated that she had the authority to reopen the underlying litigation. Again, that clearly is not the case under the precedent. And so, I just wanted to make that clear. With respect to more the, excuse me, Your Honor, the remedies section, as far as what the relief is, there was a comment made that this isn't the place for a bright line rule. I respectfully disagree. I think in terms of subject matter jurisdiction of the district court, it's absolutely the place for a bright line rule, and it's one that already exists. If it's granted in the And that's essentially the rule that we were operating under already. And so this idea that by granting jurisdiction for six months and it shall expire on a certain date, that what was really contemplated in the judge's mind was that the ability to reopen, conduct future proceedings that we agree, we're not quite sure what those might be, is wholly inappropriate. So thank you very much, Your Honor, for your time today. I appreciate it and a lot. Thank you. Thank you, counsel. Appreciate your arguments. Interesting case matter submitted, and that ends our session for today. All rise.
judges: Fisher, Paez, Nguyen